## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TEXAS ED TECH SOLUTIONS, LLC,

     Plaintiff,

                 v.

AUTHENTICA SOLUTIONS, LLC and
BRIGHTBYTES, INC.,

     Defendants.

Civil Action No.
1:20-cv-00151-SDG

### <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants Authentica Solutions, LLC (Authentica) and BrightBytes, Inc.'s (BrightBytes) motion to dismiss [ECF 24]. For the following reasons, Defendants' motion is **DENIED**.

### I.   BACKGROUND

The following facts alleged in the Amended Complaint are treated as true for the purposes of this motion.[1] Plaintiff Texas Ed Tech Solutions, LLC (Texas Ed) is a provider of consulting and sales services to educational institutions and connects such institutions to companies that provide technology and software

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

services.[2] Defendants are providers of data and analytics products and services to educational institutions.[3] On October 15, 2015, Texas Ed and Authentica entered into a sales referral agreement (the Referral Agreement) by which Authentica agreed that Texas Ed would act as the exclusive referrer for all of Authentica's solicitation of business from the Houston Independent School District (Houston ISD).[4] The Referral Agreement defined the "scope of services" as covering "any and all work and/or agreements, which [Authentica] may enter into with Houston ISD at any time."[5] Authentica agreed to pay Texas Ed a 15% referral fee for "all gross revenues paid to [Authentica] by Houston ISD."[6] The parties agreed that the Referral Agreement would be binding on any successors in interest.[7]

Pursuant to the Referral Agreement, Texas Ed alleges that it successfully solicited three contracts from Houston ISD for Authentica concerning Houston

---

[2]   ECF 16, ¶ 9.

[3]   *Id*. ¶ 10.

[4]   ECF 16-1.

[5]   *Id*. at 9.

[6]   *Id*. at 10.

[7]   *Id*. at ¶ XV.

ISD's upgrades to its Medicaid Revenue Maximization System (MRMS).[8] Texas Ed identifies these three contracts as the: (1) MRMS Project (hereafter, the MRMS Development Contract); (2) MRMS PaaS Hosting Services Contract (hereafter, the MRMS Hosting Contract); and (3) Service Level Agreement for MRMS (hereafter, the MRMS SLA Contract) (collectively, the MRMS Contracts).[9] Although Texas Ed alleges all three contracts concerned the referral of business subject to the Referral Agreement, it contends Authentica is liable for a 15% referral fee derived only from the MRMS Hosting Contract and MRMS SLA Contract.[10]

From 2015 through June 2017, Authentica made 18 payments to Texas Ed towards satisfying its referral fee obligations arising from the MRMS Hosting Contract and MRMS SLA Contract.[11] On June 29, 2017, BrightBytes announced that it had acquired Authentica.[12] On June 30 and July 3, Jeffrey Dominguez—Texas Ed's President and sole member—inquired as to the status of two outstanding unpaid invoices; Authentica's then-Chief Operating Officer informed Dominguez

---

[8]  ECF 16, ¶¶ 28–33.

[9]  *Id*. ¶ 31.

[10]  *Id*. ¶ 36.

[11]  *Id*. ¶ 44.

[12]  *Id*. ¶ 45.

that the payments owed would be late due to the transition.[13] On August 3, 2017, Texas Ed sent Defendants a letter notifying them that they were in default under the Referral Agreement for the nonpayment of fees.[14] On August 16, 2017, BrightBytes' legal counsel sent Texas Ed a letter terminating the Referral Agreement and denying any obligation to pay the outstanding invoices allegedly owed.[15] Texas Ed alleges that, despite Defendants continuing to receive revenue from the MRMS Contracts, it has not received any payment since July 2017.[16]

On August 16, 2019, Texas Ed initiated this action in the Western District of Texas.[17] On December 10, Texas Ed filed the operative Amended Complaint.[18] It asserts five causes of action: breach of contract (Count I, against Authentica); money had and received (Count II, against both Defendants); promissory estoppel (Count III, against Authentica); quantum meruit (Count IV, against both Defendants); and unjust enrichment (Count V, against both Defendants).[19] On

---

[13] ECF 16-2.

[14] ECF 16, ¶ 48.

[15] ECF 16-3.

[16] ECF 16, ¶ 53.

[17] ECF 1.

[18] ECF 16.

[19] *See generally id*.

January 10, 2020, the Texas court granted Defendants' motion to transfer, finding the choice-of-forum provision in the Referral Agreement—which selected Atlanta, Georgia as the venue for any dispute—valid and enforceable.[20] The case was transferred to this Court the same day.[21]  On January 13, Defendants filed the instant motion to dismiss.[22] Texas Ed filed a response opposing Defendants' motion on February 11.[23] Defendants filed their reply on February 25.[24]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual

---

[20]    ECF 21. *See also* ECF 16-1, ¶ 7.

[21]    ECF 22.

[22]    ECF 24.

[23]    ECF 40.

[24]    ECF 51.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

### a.   Choice of Law

The parties disagree as to whether Georgia or Texas law governs this dispute. "In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). This includes cases—such as this—that are transferred from another judicial district because a "party bound by a forum-selection clause flout[ed] its contractual obligation and file[ed] suit in a different forum." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64–65 (2013) (holding state choice-of-law rules applicable in original forum do not apply in transferee court when transfer was premised on enforcement of valid forum-selection clause). Thus, Georgia's choice-of-law rules control even though Texas Ed initiated the action in Texas.

For contract cases, "Georgia follows the traditional rule of *lex loci contractus*." *McGill v. Am. Trucking & Transp., Ins. Co.*, 77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015). However, "contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests this state." *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326 (N.D. Ga. 2015) (quoting *CS–Lakeview at Gwinnett, Inc.*

*v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428 (2008)). *See also Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*, No. 1:08-cv-1334-CC, 2010 WL 11508953, at *20 (N.D. Ga. May 17, 2010) (citing *Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998) ("Under Georgia's choice of law rules, parties by contract may stipulate that the laws of another jurisdiction will govern the transaction."). Paragraph 12 of the Referral Agreement states that it "shall be construed in accordance with the laws of the State of Texas."[25] Neither party has challenged the application of Texas law to Texas Ed's contract claim.

However, Texas Ed contends that, while "Texas law governs construction of the [Referral] Agreement, [ ] Georgia law governs the quasi-contract claims."[26] According to Texas Ed, the choice-of-law provision in the Referral Agreement is "narrow" and "expressly limited to construction of the [Referral] Agreement."[27] The Court does not agree. It is true that contractual choice-of-law clauses generally do not apply to tort claims. *See Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 1:07-cv-0286-BBM, 2008 WL 11333547, at *6 (N.D. Ga. Nov. 19, 2008) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139-40 (11th Cir. 2005); *Rayle Tech*, 133 F.3d at

---

[25]   ECF 16-1, ¶ XII.

[26]   ECF 40, at 7.

[27]   *Id.* at 7–8.

1409). However, Texas Ed's ancillary causes of action are not independent torts.[28] Rather, they are quasi-contract claims that arise entirely out of the contractual relationship between Texas Ed and Authentica. Georgia courts have found that similar quasi-contract claims are encompassed by contractual choice of law provisions. *E.g.*, *Fla. Found. Seed Producers, Inc. v. Ga. Farms Servs., LLC*, No. 1:10-cv-125 WLS, 2012 WL 4840809, at *24 (M.D. Ga. Sept. 28, 2012) (applying contractual choice of law provision to unjust enrichment claim). *See also Wells Fargo Bank v. Crowley*, No. 1:13-cv-01427-CAP-LTW, 2014 WL 11370437, at *6 (N.D. Ga. Feb. 20, 2014) ("[A]ccounting claims are often construed as remedies tied to contract, unjust enrichment, or quasi-contract claims, and would follow contractual choice-of-law provisions."). Since Texas Ed's ancillary claims arise out

---

[28] *E.g.*, *Raven Res., LLC v. Legacy Reserves Operating, LP*, 363 S.W.3d 865, 871 (Tex. App. 2012) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000) ("Unjust enrichment claims are based in quasi-contract."); *Eagle Metal Prod., LLC v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 592 (N.D.Tex. 2009) ("Promissory estoppel is a quasi-contract theory, which seeks to hold a party responsible for promises that induced justifiable reliance on another."); *Doe v. United States*, 31 F. App'x 158 (5th Cir. 2001) (citing *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App. 1988) ("Under Texas law, recovery under the theory of quantum meruit is considered recovery on a quasi-contract or a contract implied in law."); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997) ("A cause of action for money had and received belongs conceptually to the doctrine of unjust enrichment.").

of the parties' contractual dealings, they too are covered by the valid choice of law provision in the Referral Agreement and, thus, governed by Texas law.

**b.    Texas Ed's Breach of Contract Claim**

Defendants contend that Texas Ed's breach of contract claim must be dismissed because Texas Ed: (1) did not adequately allege compliance with the Referral Agreement's "Sales Process" provision, and (2) is attempting to recover money paid to BrightBytes—not Authentica. In Texas, the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Bank of Texas v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App. 2008).

In relevant part, the Referral Agreement "Sales Process" provision states:

> [Authentica] agrees that [Texas Ed] shall be the exclusive Referrer for all matters relating to [Authentica's] solicitation of business from Houston ISD. Accordingly, during the Sales Process, as defined below, [Texas Ed] shall not offer products services, or solutions presented in the Sales Process competitive to the products, services or solutions presented in the Sales Process to Houston ISD. "Sales Process" shall mean the process of presenting [Authentica] as an opportunity to Houston ISD for a particular product, service or solution. The Sales Process shall begin upon written confirmation by [Texas Ed]. The end of the Sales Process shall occur upon the earlier of

the decision by Houston ISD to decline the opportunity
or the acceptance by Houston ISD of the opportunity.[29]

In the Amended Complaint, Texas Ed alleges that "[a]t Authentica's invitation,
which [Texas Ed] accepted in writing via email, [Texas Ed] engaged in the Sales
Process presenting Authentica for both the MRMS SLA Contract and MRMS
Hosting Contract."[30] Defendants contend this allegation is not enough for Texas
Ed to plead compliance with the Referral Agreement. The Court does not agree.
Texas Ed has alleged enough facts to state a plausible claim for relief. *Twombly*, 550
U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose
a probability requirement at the pleading stage; it simply calls for enough fact to
raise a reasonable expectation that discovery will reveal evidence of [the claim].").
Detailed factual allegations are not required at this stage to survive a motion to
dismiss. *Iqbal*, 556 U.S. at 678.

Accepting these allegations as true, Defendants nonetheless assert Texas
Ed's claim fails because it did not attach to the Amended Complaint certain
addenda to the Referral Agreement. According to the Referral Agreement, "[e]ach
contract resulting from a Sales Process should be referenced and acknowledged

---

[29]   ECF 16-1, at 2.

[30]   ECF 16, ¶ 38.

by both parties and attached as an addendum to this Agreement."[31] While Defendants are correct that Texas Ed did not attach either of the at-issue MRMS Contracts to the Referral Agreement included with the Amended Complaint, this has no bearing on whether the federal pleading standard has been satisfied. *E.g., Bridge2 Sols., Inc. v. RAZR Mktg., Inc.*, No. 1:16-cv-3770-SCJ, 2017 WL 4948073, at *4 (N.D. Ga. June 15, 2017) ("[W]ritten instruments are not required to be attached to a party's pleading . . . case law concludes that a failure of a plaintiff to attach a copy of the contract sued upon to the complaint is not grounds for dismissal of the complaint."). And, as indicated, Texas Ed did attach the Referral Agreement on which its claims are based to its Amended Complaint.

Defendants also assert that Texas Ed's breach of contract claim must be dismissed because it cannot recover money paid to BrightBytes as opposed to Authentica. According to Defendants, the 15% referral fee is not owed on any money paid by Houston ISD to BrightBytes. The Referral Agreement expressly defines the "Client" as Authentica.[32] It also states that "[Authentica] agrees to pay [Texas Ed] a referral fee of 15% of all gross revenues ***paid to [Authentica] by***

---

[31]   ECF 16-1, at 2.

[32]   *Id.*

*Houston ISD*."[33] In the Amended Complaint, Texas Ed alleges that, after terminating the Referral Agreement and cessation of payments, "BrightBytes has received at least $3.5 million from [Houston ISD] pursuant to the [MRMS Contracts]."[34] Relying on this sequence, Defendants posit that money paid by Houston ISD to BrightBytes is not subject to the referral fee specified in the Referral Agreement.

The Court does not agree. Texas Ed and Authentica agreed that the Referral Agreement would be binding on any of their successors in interest:

> This Agreement may not be assigned by either party without the prior written consent of the other party. Except for the prohibition on assignment contained in the preceding sentence, ***this Agreement shall be binding upon and insure to the benefits of the heirs, successors and assigns of the parties hereto***.[35]

In the Amended Complaint, Texas Ed alleges that BrightBytes announced its acquisition of Authentica on June 29, 2017.[36] This allegation is confirmed by the termination letter sent by BrightBytes' legal counsel to Texas Ed.[37] Texas Ed alleges

---

[33]   *Id*. at 10 (emphasis added).

[34]   ECF 16, ¶ 51.

[35]   *Id*. at ¶ XV (emphasis added).

[36]   ECF 16, ¶ 45.

[37]   ECF 16-3 ("As you know, BrightBytes has acquired [Authentica].").

that BrightBytes subsequently became Authentica's successor in interest, receiving millions of dollars in revenue from the MRMS Contracts solicited by Texas Ed that is subject to the Referral Agreement.[38] Texas Ed's allegations are augmented by the fact that *BrightBytes*—not *Authentica*—terminated the Referral Agreement.[39] Under these circumstances, Texas Ed has plausibly alleged that Authentica's payment obligations in the Referral Agreement passed to BrightBytes. Defendants are not entitled to the dismissal of the breach of contract claim at this stage.

### c.    Texas Ed's Remaining Quasi-Contract Claims

Defendants contend that each of Texas Ed's remaining quasi-contract claims must be dismissed. The Court addresses each of Defendants' arguments in turn.

### i.    Texas Ed's Quasi-Contract Claims Are Not Barred by the Referral Agreement at this Stage.

Defendants contend that the Referral Agreement itself precludes each of Texas Ed's quasi-contract claims. "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("When a valid agreement already addresses the matter, recovery

---

[38]    ECF 16, ¶¶ 41, 43, 51.

[39]    ECF 16-3.

under an equitable theory is generally inconsistent with the express agreement."). *See also TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014) (applying rule to claims for unjust enrichment and money had and received). However, it is axiomatic that "a party to a contract may seek alternative relief under both contract and quasi-contract theories." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 762 (N.D. Tex. 2012). *See also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). The alternative pleading of equitable claims is available if "one party disputes the existence of a contract governing the dispute." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014).

As discussed above, Texas Ed asserts a claim for breach of contract in the Amended Complaint that is premised on the Referral Agreement. Texas Ed's quasi-contract claims derive from that same alleged contractual relationship; they are not independent torts. Defendants challenge the applicability of the Referral Agreement to the parties' dispute. Moreover, this case is currently at the pleading stage. The Court has not yet determined if the Referral Agreement is a valid and enforceable contract that governs the parties' relationship. Texas Ed is not prevented from pleading alternative theories of recovery at this point in the litigation. *E.g., In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d

1295, 1330–31 (N.D. Ga. 2019) (citing *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) ("[W]hile a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative."); *S. Coal Corp. v. Drummond Coal Sales, Inc.*, No. 1:17-cv-1104-AT, 2017 WL 7550765, at *3 (N.D. Ga. Nov. 15, 2017) ("[F]ederal pleading standards apply and allow [plaintiff] to plead claims in the alternative."); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 768 (N.D. Tex. 2006) ("[O]rdinarily, claims in quasi-contract should not be dismissed until the existence of a valid contract governing the parties' relationship has been established.").

### ii. Texas Ed's Money Had and Received and Unjust Enrichment Claims (Counts II and IV) Are Not Time Barred At This Stage.

Defendants argue that Texas Ed's claims for money had and received and unjust enrichment are barred by the statutes of limitation. Texas applies a two-year limitations period to both claims. *E.g.*, *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007) ("[U]njust enrichment claims are governed by the two-year statute of limitations."); *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 883 (Tex. App. 2012) (holding defendant's counterclaim for money had and received "is subject to the two-year statute of limitations"); *Friddle v. Fisher*, 378 S.W.3d 475, 483 (Tex. App. 2012) ("Actions for . . . unjust enrichment/money had

and received each has a two-year statute of limitations."); *Pollard v. Hanschen*, 315 S.W.3d 636, 641 (Tex. App. 2010) ("A claim for money had and received is equitable in nature and belongs conceptually to the doctrine of unjust enrichment. As such, the two-year statute of limitations applies."). These claims "accrue[ ] and limitations begins to run when facts exist that authorize a claimant to seek judicial relief." *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542 (Tex. 2017). *See also Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004); *Terra Nova Scis., LLC v. JOA Oil & Gas Houston, LLC*, 738 F. Supp. 2d 689, 698 (S.D. Tex. 2010). Put another way, "[c]laims for money had and received and unjust enrichment begin to accrue when the money is paid." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 846 (S.D. Tex. 2018). *See also Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 337 (Tex. App. 1999) ("A cause of action for money had and received accrues when money is paid.").

Reviewing the Amended Complaint, the Court finds that the statute of limitations issue is a mixed question of fact and law that cannot be resolved at the motion to dismiss stage. The Court cannot conclude—based solely on Texas Ed's allegations—the precise time these claims accrued. For example, Texas Ed alleges that "on or around July 2017, [Texas Ed] stopped receiving payments for amounts

due under [the] Referral Agreement."[40] Texas Ed inquired about the status of two outstanding invoices on June 30 and July 3.[41] Texas Ed then sent Defendants a letter on August 3, notifying them that they were in default under the Referral Agreement.[42] Finally, on August 16, BrightBytes terminated the Referral Agreement and stated that it did not "owe[ ] any fees related to the contract at issue."[43] Given these allegations, the claims may have accrued at any point during this sequence. Without evidence, the Court is unable to accurately determine when the facts became known to Texas Ed and the statutes of limitations began to run. At bottom, Defendants are not entitled to the dismissal of these claims at this juncture, as the parties are entitled to take discovery on this issue. If the evidence shows these claims were untimely, Defendants shall be permitted to reassert their argument on a motion for summary judgment.

### iii. Texas Ed's Quantum Meruit Claim Against BrightBytes Survives Dismissal.

Finally, BrightBytes argues that Texas Ed's quantum meruit claim against it must be dismissed because: (1) recovery against BrightBytes is barred by the

---

[40]   ECF 16, ¶ 66.

[41]   ECF 16-2.

[42]   ECF 16, ¶ 48.

[43]   *Id.*

Referral Agreement between Texas Ed and Authentica, and (2) Texas Ed does not allege that it undertook any efforts specifically to benefit BrightBytes.

A claim for quantum merit "is a theory of recovery based on principles of unjust enrichment." *Hurd*, 880 F. Supp. 2d at 762 (citing *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)). The elements of the cause of action are that:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Bashara*, 685 S.W.2d at 310.

BrightBytes premises its first argument for dismissal on *San Antonio Masonry & Tool Supply, Inc. v. Epstein & Sons International, Inc.* In that case, the Texas Court of Appeals affirmed the grant of summary judgment in favor of the defendant general contractor on plaintiff's quantum meruit claim based on an express, valid contract between the plaintiff and the defendant subcontractor. 281 S.W.3d 441, 446 (Tex. App. 2005) ("The express contract between Masonry and New Age bars Masonry's quantum meruit action against Epstein."). BrightBytes argues that—like the subcontractor in *San Antonio Masonry*—the Referral

Agreement bars Texas Ed's quantum meruit claim against it, even though it was not a named party to the Referral Agreement. The Court finds that the resolution of this issue is premature. As stated, the Court has not yet determined whether the Referral Agreement is valid and enforceable or what contractual obligations BrightBytes may have assumed from Authentica subsequent to the acquisition. Without such findings, the principles underlying *San Antonio Masonry*—decided on summary judgment—are inapplicable. Without making any determination as to the ultimate merits of BrightBytes' argument, the Court concludes it is not enough to garner dismissal at this stage.

Alternatively, BrightBytes argues the quantum meruit claim fails because Texas Ed "does not allege what services [it] provided for BrightBytes and, therefore, lacks the direct link between the parties involved required for quantum meruit."[44] BrightBytes correctly recites the law: "To recover in quantum meruit, the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988). Here, Texas Ed alleges it solicited the Houston ISD business for Authentica—not for the benefit of

---

[44]   ECF 24, at 11.

BrightBytes. But Texas Ed also plausibly alleges that BrightBytes subsequently became Authentica's successor in interest. This is sufficient at this stage for Texas Ed to maintain its quantum meruit claim against BrightBytes.

## IV. CONCLUSION

Defendants' motion to dismiss [ECF 24] is **DENIED**. Pursuant to the Court's February 3, 2020 Order, within 14 days after the entry of this Order, the parties shall file their initial disclosures and a joint preliminary report and discovery plan.[45] Defendants shall file their Answers to the remaining portions of the Amended Complaint within 21 days after entry of this Order. Discovery shall commence 30 days after Defendants file their Answers.

**SO ORDERED** this the 28th day of September 2020.

Steven D. Grimberg
United States District Court Judge

---

[45]   ECF 39.