# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TEXAS ED TECH SOLUTIONS, LLC, <br>    Plaintiff, <br>               v. <br> AUTHENTICA SOLUTIONS, LLC and BRIGHTBYTES, INC., <br>    Defendants. | Civil Action No. <br> 1:20-cv-00151-SDG |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Texas Ed Tech Solutions, LLC's (Texas Ed) motion to dismiss counterclaims asserted by Defendant Authentica Solutions, LLC (Authentica) [ECF 77]. For the following reasons, Texas Ed's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The facts alleged in Texas Ed's Amended Complaint are more thoroughly set forth in the Court's September 20, 2020 Order denying a motion to dismiss filed by Authentica and Defendant BrightBytes, Inc.[1] On October 19, Authentica filed its Answer and asserted three counterclaims against Texas Ed for (1) breach of

---

[1] ECF 63.

contract, (2) money had and received, and (3) unjust enrichment.[2] On November 9, Texas Ed filed the instant motion to dismiss those counterclaims.[3] Authentica filed its response in opposition to Texas Ed's motion to dismiss on November 23; Texas Ed filed its reply on December 7.[4]

## II.   LEGAL STANDARD

The Court evaluates a motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) in the same manner as a motion to dismiss a complaint. *United States v. Zak*, 481 F. Supp. 3d 1305, 1307 (N.D. Ga. 2020). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At this juncture, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the

---

[2]   ECF 71.

[3]   ECF 77.

[4]   ECF 81; ECF 86.

plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Texas Ed seeks the dismissal of each counterclaim asserted by Authentica. The Court addresses each in turn.

#### a. Breach of Contract (Counterclaim Count I)

Authentica alleges Texas Ed breached the sales referral agreement (Referral Agreement) between the parties by initiating this suit in the United States District Court for the Western District of Texas. The Referral Agreement contains a forum selection provision mandating that "Atlanta, GA shall be the venue for any and all litigation arising by or under this Agreement."[5] On August 16, 2019, Texas Ed initiated this case in the Texas court.[6] On January 10, 2020, the Texas court granted Defendants' motion to transfer, finding the forum selection

---

5   ECF 16-1, at 5 § VII.

6   ECF 1.

provision valid and enforceable.[7] Authentica alleges Texas Ed's incorrect choice of forum constituted a breach of the Referral Agreement, which caused it damages in the form of the attorneys' fees and litigation costs it had to expend enforcing the forum selection provision. Texas Ed, conversely, contends Authentica's breach counterclaim must be dismissed pursuant to Texas's election of remedies doctrine.[8]

The elements of a breach of contract claim are "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Bank of Texas v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App. 2008). Texas Ed invokes the election of remedies doctrine, which "is an affirmative defense that, under certain circumstances, bars a claimant from pursuing two inconsistent remedies" and "may constitute a bar to relief when one successfully exercises an informed choice between two or more remedies, rights, or facts that are so inconsistent as to constitute manifest injustice." *Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621, 628 (Tex. App. 2001).

---

[7]   ECF 16.

[8]   The Court previously found that Texas law governs all substantive claims related to the Referral Agreement [ECF 63, at 7–10].

The parties do not cite a case discussing whether a party may seek damages under a breach of contract theory for its opponent filing a lawsuit in an incorrect forum in the face of a valid forum selection clause. Texas Ed points to *Tribble & Stephens Co. v. RGM Constructors, L.P.*, in which the Texas Court of Appeals held that "[t]he election of remedies doctrine precludes [defendant/counterclaim plaintiff] from attempting to sustain a cause of action for money damages for the breach of the *venue* provision." 154 S.W.3d 639, 659 (Tex. App. 2004) (emphasis added). In *Tribble*, the plaintiff/counterclaim defendant originally filed suit in Travis County, Texas in derogation of a choice of venue clause that mandated all suits involving the at-issue contract be resolved in Harris County, Texas. *Id.* at 658. Defendant/counterclaim plaintiff filed a motion to transfer venue, which the trial court granted. *Id.* Defendant/counterclaim plaintiff subsequently asserted a breach of contract counterclaim based on plaintiff/counterclaim defendant's failure to sue in the correct county in conformity with the choice of venue provision. *Id.* The trial court granted plaintiff/counterclaim defendant's motion for summary judgment on the breach of contract claim and the Texas Court of Appeals affirmed, holding:

> [W]e decline to hold that [plaintiff/counterclaim defendant's] breach of the venue provision was a material breach sufficient to sustain a separate cause of

> action. [Defendant/counterclaim plaintiff] does not cite, and we have not found, any authority to support its claim that a separate cause of action exists for the breach of this venue provision. Importantly, to the extent the venue provision was breached, [defendant/counterclaim plaintiff] sought specific performance of that provision by filing its motion to transfer venue, and the motion was granted. Therefore, [defendant/counterclaim plaintiff] received a remedy for any breach of the venue provision when the suit was transferred. Accordingly, the trial court did not grant [plaintiff/counterclaim defendant] more relief than requested concerning [defendant/counterclaim plaintiff's] venue claim.

*Id*. (internal citations and punctuation omitted).

Authentica, conversely, points to the Northern District of Texas's decision in *Vianet Group PLC v. Tap Acquisition, Inc.*, which found that the plaintiff may seek attorneys' fees as damages in a breach of contract action premised on the defendant's noncompliance with a forum selection clause when it initiated a prior case in state court. No. 3:14-cv-3601-B, 2016 WL 4368302, at *4 (N.D. Tex. Aug. 16, 2016). The *Vianet* court expressly limited its decision to whether a party may recover its attorneys' fees as damages for a breach of contract claim. *Id*. at *4, *7–*9. *See also In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 175 (Tex. 2013) ("While attorney's fees incurred in prosecuting this claim are not compensatory damages, the fees comprising the breach-of-contract damages are. If the underlying suit concerns a claim for attorney's fees as an element of damages . . .

then those fees may properly be included in a judge or jury's compensatory damages award.").

Crucial to this case, the *Vianet* court specifically noted: "Defendants do not raise an important predicate issue: whether, under Texas law, a damages remedy is available to a party whose forum selection clause has been breached, but who possibly could obtain other traditional remedies for such a breach. The Court assumes without deciding that such a remedy is available." *Id*. at *4 n.6 (citing *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App. 2005) ("A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit."); *MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, 148 F. Supp. 3d 1169, 1182 (D. Colo. 2015) (predicting that, under Colorado law, the Colorado Supreme Court would permit a damages remedy to party whose forum selection clause was breached because no other remedy was available)).

Authentica focuses on the precise question answered in *Nalle Plastics* and *Vianet*; *i.e.*, whether it may properly seek its attorneys' fees and costs as damages for Texas Ed's alleged breach of the forum selection clause. However, the Court must first answer the threshold question not reached by the *Vianet* court; can Authentica seek redress through a breach of contract action when it has

already sought and obtained a transfer to the correct forum? Although the Texas Supreme Court has not yet weighed in, the *Tribble* decision—relying on the election of remedies doctrine—prevents Authentica from doing so. The Court agrees with the *Tribble* court's reasoning and conclusion. Pursuant to the election of remedies doctrine, "[r]emedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction." *Calstar Props., L.L.C. v. City of Fort Worth*, 139 S.W.3d 433, 440 (Tex. App. 2004) ("A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a 'double recovery.'"). *See also Fina Supply, Inc. v. Abilene Nat. Bank*, 726 S.W.2d 537, 541 (Tex. 1987) ("The doctrine is designed to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong.").

Here, Authentica has already chosen its remedy; the Texas court enforced the forum selection clause—pursuant to Authentica's motion—and transferred the case to this district. Put another way, Authentica has received specific performance of the forum selection provision. It would be inconsistent to allow Authentica to also pursue a breach claim premised on the same contractual provision. Therefore, like *Tribble*, Authentica's counterclaim must be dismissed. However, this Order

does not prevent Authentica from seeking its attorneys' fees and costs—if appropriate—at a later stage of this litigation.

   b.  **Money Had and Received and Unjust Enrichment (Counterclaim Counts II and III)**

In Counterclaim Counts II and III, Authentica alleges Texas Ed impermissibly sought and obtained certain sums of money that it is not entitled to retain.[9] Texas Ed argues these claims must be dismissed because (1) Authentica did not plead them with the requisite specificity under Rule 9(b), and (2) they are barred by the voluntary payment doctrine.

According to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b)). "When the Rule 9(b) pleading standard applies, the complaint must contain

---

9   Under Texas law, unjust enrichment is not an independent cause of action; instead, it is "a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received." *Metro. Life Ins. Co. v. Battle*, No. 3:16-cv-2524-D, 2018 WL 3438913, at *2 (N.D. Tex. July 17, 2018) (collecting cases); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (stating that, although "the Supreme Court of Texas and other courts still occasionally refer to an 'unjust enrichment claim' . . . [t]hese opinions do not [ ] characterize unjust enrichment as a separate cause of action from money had and received; they consider it to be a general theory of recovery for an equitable action seeking restitution."). At this stage, the Court will address both claims cumulatively without addressing the ultimate validity of the unjust enrichment claim as a stand-alone tort.

factual allegations stating the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) ("In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct."). "Rule 9(b) is an exception to the liberal federal court pleading requirements embodied in Rule 8(a)"; thus its "stringent pleading requirements should not be extended to causes of actions not enumerated therein." *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004).

Here, Authentica's counterclaims are not premised on allegations or theories of fraud. To the contrary, "[a] cause of action for money had and received is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 (Tex. 2015) ("To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him."). Texas Ed does not point to a single case applying the heightened requirements of Rule 9(b) to such claims. In fact, at least one Texas federal court has expressly rejected this precise argument. *Merrill Lynch, Pierce, Fenner & Smith,*

*P.C. v. Greystone Servicing Corp.*, No. 3:06-cv-0575-P, 2007 WL 2729935, at *14 (N.D. Tex. Sept. 18, 2007). Although Authentica uses the word "mistake" in pleadings its counterclaims—*i.e.*, "Authentica employees mistakenly paid some of the Texas Ed invoices submitted for the Second Contract to the detriment of Authentica"[10]—the Court does not believe it carries talismanic legal significance. Put another way, Authentica's colloquial use of the word "mistake" does not automatically transmute these claims into fraud-based causes of action. Therefore, the Court finds Rule 9(b) does not apply. Since Authentica must only satisfy the more liberal pleading requirements of Rule 8(a)—which Texas Ed does not contend that Authentica has failed to satisfy—the motion to dismiss is denied as to this issue.

Second, Texas Ed argues Authentica's counterclaims are barred based on the common law voluntary payment doctrine. Under this rule, "[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768

---

10   ECF 71, at 47 ¶ 66.

(Tex. 2005). The rule constitutes an affirmative defense to unjust enrichment and restitution-based claims. *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009). Put another way, "[t]he voluntary payment rule precludes a party from paying out his money, leading the other party to act as though the matter were closed, and then be in the position to change his mind and invoke the aid of the courts to get it back." *Id.* (punctuation omitted). As noted by the Texas Supreme Court, the doctrine "has diminished in scope, as the rule's equitable policy concerns have been addressed through statutory or other legal remedies." *Id.* (noting the Texas Supreme Court had only affirmatively applied the doctrine in two cases during the previous 40 years).

Here, the crux of Authentica's counterclaims is its allegation that it mistakenly paid to Texas Ed money on invoices to which the latter was not entitled. Authentica does not argue the payments were involuntary; rather, it alleges it "was unaware of several key facts about the payments that Texas Ed alleged it was owed."[11] Although these payments could certainly fall within the ambit of those barred by the voluntary payment doctrine, the Court believes such a finding is inappropriate at this preliminary stage. As stated, the rule is an

---

[11]   ECF 71, at 45 ¶ 57.

affirmative defense. Texas Ed will bear the ultimate burden of proving its applicability. The key inquiry of "whether or not a consumer had full knowledge of all the facts in any given case will depend upon the specific circumstances presented" and "may require balancing competing interests depending upon the parties' circumstances." *BMG*, 178 S.W.3d at 776. *See also Williams v. Lakeview Loan Servicing LLC*, No. 4:20-cv-01900, 2020 WL 7632257, at *5 (S.D. Tex. Dec. 22, 2020) ("[A]s a defensive matter, [the voluntary payment] doctrine involves factual issues that are inappropriate for resolution in a Rule 12(b)(6) context.").

In sum, the Court believes this is a fact intensive inquiry the parties should have the opportunity to develop during discovery. Therefore, Texas Ed is not entitled to dismissal at this stage; however, it may—if appropriate—reassert its argument on a motion for summary judgment.

**IV.   CONCLUSION**

Texas Ed's motion to dismiss [ECF 77] is **GRANTED IN PART** and **DENIED IN PART**. Counterclaim Count I is **DISMISSED**. Authentica may proceed with Counterclaim Counts II and III.

**SO ORDERED** this the 1st day of April 2021.

Steven D. Grimberg
United States District Court Judge